**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Civil Action Number:

ANDRES GOMEZ,

        Plaintiff,
vs.

PRADA USA CORP. and PRADA S.p.A.,
d/b/a www.miumiu.com

        Defendant

---

## COMPLAINT

---

COMES NOW Plaintiff Andres Gomez, by and through his undersigned counsel, and hereby files this Complaint and sues Defendant Prada USA Corp. and Defendant Prada S.p.A. for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and pursuant to the common law tort of trespass and alleges as follows:

### INTRODUCTORY STATEMENT

1.      Plaintiff Andres Gomez brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant and hereby files this Complaint and sues Defendant Prada USA Corp. and Defendant Prada S.p.A.'s www.miumiu.com website (which is an extension of Miu Miu retail stores)

throughout the United States of America, where the groundbreaking "American with Disabilities Act" has been the law of the land since 1992.

2.      Title III of the ADA has been judged to apply to websites. Specifically, the Honorable Bryan F. Foster held on March 3, 2016 that the ADA applied to websites where the plaintiff had demonstrated "he was denied full and equal enjoyment of the goods, services, privileges, and accommodations offered by defendant [via its website] because of his disability."[1]

3.      Businesses can make choices (unlike visually impaired individuals) and can either make their Websites inclusive, or they can make them effective **Zones of Discrimination** and exclude the visually-impaired.

4.      When the operators of a website do not take steps necessary to notice people of their website's limitations or to provide programming that works (interfaces) with universal screens readers[2], they are not only marginalizing the visually-impaired community, but they are actively excluding them from their business, which in fact segregates the disabled into being non-participants, ie: second-class citizens.

5.      This case arises out of the fact that Defendant Prada USA Corp. and Defendant Prada S.p.A. have operated their business in a manner and way that completely excludes individuals who are visually impaired from enjoying and accessing the www.miumiu.com website.

---

[1] *Davis v. Bmi/Bnd Travelware,* 2016 Cal. Super. LEXIS 217 (2016).

[2] A "screen reader" is a software application that enables people with severe visual impairments to use a computer. Screen readers work closely with the computer's Operating System (OS) to provide information about icons, menus, dialogue boxes, files and folders.

6.      Defendant Prada USA Corp. (also referenced as "Defendant Prada USA" and collectively, with Defendant Prada S.p.A. as "Defendants") owns and operates places of public accommodation throughout the United States which are upscale designer womens clothing, shoes, and accessory stores under the brand name "Miu Miu." Miu Miu stores offer for sale to the public womens clothing, handbags/wallets, shoes, jewelry, and eyewear/sunglasses, which is heretofore, referenced as "Miu Miu brand merchandise."

7.      Defendant Prada S.p.A. (also referenced collectively with Defendant Prada USA Corp. as "Defendants") offers a website www.miumiu.com ("Website") which is directly connected to Defendant Prada USA's Miu Miu stores. The Website provides a site locator to Defendant Prada USA's Miu Miu stores.  Thus, Defendant Prada's Website has a true nexus to Defendant Prada USA's Miu Miu stores.

8.      This complaint seeks declaratory and injunctive relief to correct Defendants' policies and practices, to include measures necessary to ensure compliance with federal law, to include monitoring of such measures, and to update and remove accessibility barriers and obstructions to effective communications on and with the Website so that Plaintiff Gomez (and other individuals who are visually impaired) can access and communicate with Defendants effectively and timely.

9.      This complaint also seeks compensatory damages to compensate Plaintiff Gomez for having been subjected to unlawful discrimination and trespass by Defendants as a result thereof.

## JURISDICTION & VENUE

10.      This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. §

1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendants' business.

11.     This is also an action with supplemental jurisdiction over related state law claim pursuant to 28 U.S.C. §1367.

12.      State law provides for declaratory and injunctive relief to prevent the continuing act of trespass against the Plaintiff's personal property (his personal computer). Remedies provided under common law for trespass are not exclusive, and may be sought connection with suits brought under the ADA.

13.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant Prada S.p.A. is conducting business within the within the jurisdiction of this court by virtue of the fact its Website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District. Defendant Prada USA's Miu Miu Design District store is located in the district[3].  Further, Defendant Prada USA is authorized to conduct business within the state of Florida as a foreign for profit corporation.

14.     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

**Andres Gomez**

15.     Plaintiff Andres Gomez (also referenced as "Plaintiff") is a resident of the state of Florida and resides within the Southern judicial district, is *sui juris*, is disabled as defined by the ADA and the Rehabilitation Act.

---

[3] There is also a store in Bal Harbor and a shop-in-shop located within Saks 5th Avenue located within this District

16.     Plaintiff Andres Gomez is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h).   Andres Gomez is substantially limited in performing one or more major life activities, including (but not limited to) accurately visualizing his world and adequately traversing obstacles.

17.     Plaintiff Gomez cannot use the computer without the assistance of screen reader software.

**Prada S.p.A.**

18.     Defendant Prada S.p.A. is the owner and operator of the website www.miumiu.com. Among other things, Prada S.p.A. is the owner and operator of the international chain of designer prêt-à-porter stores under the brand name "Miu Miu" which sell Miu Miu brand merchandise. Miu Miu is an Italian high fashion women's clothing and accessory brand established in 1993 by Miuccia Prada. The name Miu Miu was conceived from Miuccia Prada's family nickname.

19.     Miu Miu is a wholly owned subsidiary of Prada S.p.A., which is traded on the Hong Kong stock exchange. USA Corp. and headquartered in Milano, Italy.

**Prada USA Corp.**

20.     Defendant Prada USA Corp. (also referenced as Defendant) is the United States subsidiary company of Prada S.p.A. which is the owner and operator of the United States locations of Prada S.p.A.'s Miu Miu designer prêt-à-porter stores. Prada S.p.A. transacts its Miu Miu United States stores and marketing, distribution, and advertising through its wholly owned subsidiary, Prada USA Corp.

## FACTS

21.     Plaintiff Gomez's disability limits major life activities, and he requires assistive technologies, auxiliary aids and services for effective communication.

22.     Plaintiff Gomez frequently utilizes the internet. Due to the fact that he is legally blind, in order to effectively communicate and comprehend information available on the internet and access/comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

23.     At all times material hereto, Defendant Prada USA was (and is) an organization owning and operating the United States Miu Miu stores. Each Miu Miu store is open to the general public. As the owner and operator of the Miu Miu stores in the United States, Defendant Prada USA is defined as a "Public Accommodation" within meaning of Title III because Defendant Prada USA is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

24.     By virtue of being a retail store open to the public, each of Defendant Prada USA's Miu Miu stores are a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(E) and 28 C.F.R. Part 36. Defendant Prada USA's Miu Miu stores are also referenced throughout as "Place(s) of Public Accommodation," "Miu Miu stores."

25.     There are two Miu Miu stores one shop-in-shop store are located within South Florida. Further, there are select independent retail stores that sell a limited selection of Miu Miu brand merchandise.

26.     Defendant Prada S.p.A. controls, maintains, and operates an adjunct website called www.miumiu.com. One of the functions of Defendant Prada S.p.A.'s Website  is to provide the public information on the various locations of Defendant Prada USA's Miu Miu stores, shop-in-shops within fine department stores within the United States, and other fine retailers which sell Miu Miu brand merchandise both throughout the United States and within the state of Florida.

27.     Defendant Prada S.p.A.'s Website also services Defendant Prada USA's Miu Miu stores by providing information on Miu Miu brand merchandise, Miu Miu runway photos from recent fashion shows, women's stories and a Miu Miu music app, and information on the Miu Miu club in Paris, as well as other information Defendants are interested in communicating to its customers.

28.     Since the Website allows the public the ability to locate Miu Miu store locations, the Website is an extension of the physical Miu Miu stores.   By this nexus, the website is characterized as a Place of Public Accommodation; 42 U.S.C. § 12181(7)(E) and an extension of Defendant's business.

29.     Most importantly, Defendant Prada S.p.A.'s Website is a public store that is on-line, where the public can view and purchase Miu Miu brand merchandise on-line.

30.     The Website is itself a sales establishment, which is a Place of Public Accommodation pursuant to 42 U.S.C. § 12181(7)(E). As such, the Website must comply with all requirements of the ADA.

31.     This means the website must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the public.

32.     At all times material hereto, Defendant Prada S.p.A. was (and is) an organization owning and operating the Website available throughout the United States to support Miu Miu stores located within the United States and as an online store to sell Miu Miu merchandise throughout the United States to the public.  Since the Website is open through the internet to the public as a retail store and is a Place of Public Accommodation Defendant Prada S.p.A. (as the owner and operator of the Miu Miu Website), is defined as a "Public Accommodation" within meaning of Title III because Defendant Prada S.p.A. is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2). As such, Defendant Prada S.p.A. has subjected itself and the Website it has created and maintains, to the Americans with Disabilities Act ("ADA").[4]

33.     Plaintiff Andres Gomez is a customer who is interested in purchasing womens wearables and purses for his girlfriend such as Miu Miu brand merchandise which is offered through the Defendant Prada USA's Miu Miu stores and which is offered through Defendant Prada S.p.A.'s  website.

34.     The opportunity to shop for trendy and well-made Miu Miu brand merchandise from his home is an important accommodation for Plaintiff Gomez, because traveling outside the home as a blind individual is a difficult and frightening experience.

---

[4] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

Defendants have not provided their business information in any other digital format that is accessible for use by the blind and visually impaired individuals.

35.     Like most of us, Plaintiff Andres Gomez accesses several websites at a time to compare merchandise and prices. When shopping online, Plaintiff Gomez may look at several dozen websites to compare features, styles, and prices.

36.     During the month of June 2016, Plaintiff Gomez attempted on several occasions to utilize Defendant Prada S.p.A.'s Website to browse through the merchandise to educate himself as to the Miu Miu brand merchandise with the intent of making a purchase.

37.     The Plaintiff utilizes JAWS Screen Reader software (hereinafter referenced as "screen reader software"), which when utilized allows individuals who are visually impaired to communicate with internet website(s).

38.     The Website contains access barriers that prevent free and full use by visually impaired individuals using keyboards and screen reading software. These barriers are pervasive and include, but are not limited to: the lack of alt-text on graphics, inaccessible forms, the lack of adequate prompting and labeling, the denial of keyboard access; and the requirement that transactions be performed solely with a mouse.

39.     The Website also lacks prompting information and accommodations necessary to allow visually impaired individuals who use screen reader software to locate and accurately fill-out online forms to for the purposes of purchasing merchandise from that Website.

40.     The Plaintiff attempted to locate an ***Accessibility Notice*** which would direct him to a webpage with contact information for disabled individuals who have

questions, concerns or who are having difficulties communicating with the business. However, he was unable to do so because no such link or notice was provided.

41. The fact that Plaintiff Gomez could not communicate with (or within) the Website left him feeling excluded, as he is unable to participate in the online shopping experience as provided at the www.miumiu.com website as experienced by the general public.

42. Plaintiff Andres Gomez continues to desire to patronize the Website, but is unable to do so, as he is unable to effectively communicate with the Defendant. Thus, the Plaintiff and others with vision impairments will suffer continuous and ongoing harm from the Defendant's omissions, policies, and practices set forth herein unless enjoined by this Court.

43. Because of the nexus between Defendant Prada USA's Miu Miu retail stores and Defendant Prada S.p.A.'s Website and the fact that the Website clearly requires input from Defendant Prada USA's Miu Miu retail stores for its operation and use, the Website is a Place of Public Accommodation subject to requirements of the ADA.

44. On information and belief, Defendants have not initiated a Web Accessibility Policy to insure full and equal use of the Website by individuals with disabilities.

45. On information and belief, Defendants have not instituted a Web Accessibility Committee to insure full and equal use of the Website by individuals with disabilities.

46.     On information and belief, Defendants have not designated an employee as a Web Accessibility Coordinator to insure full and equal use of the Website by individuals with disabilities.

47.     On information and belief, Defendants have not instituted a Web Accessibility User Accessibility Testing Group to insure full and equal use of the Website by individuals with disabilities.

48.     On information and belief, Defendants have not instituted a User Accessibility Testing Group to insure full and equal use of the Website by individuals with disabilities.

49.     On information and belief, Defendants have not instituted a Bug Fix Priority Policy.

50.      On information and belief, Defendants have not instituted an Automated Web Accessibility Testing program.

51.     On information and belief, Defendants have not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

52.     On information and belief, Defendants have not created and instituted on the Website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendants will have the www.miumiu.com website, Applications, and Digital Assets accessible to the visually impaired community.

11

53.     On information and belief, the Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[5].

54.     On information and belief, Defendants do not have a Web Accessibility Policy.

55.     On information and belief, Defendants have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its Website to visually impaired individuals who want the safety and privacy of purchasing Miu Miu brand merchandise offered on its Website online from their homes.

56.     Further, Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities

57.     The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites, such as the www.miumiu.com website.[6]

58.     On information and belief, the Defendants are aware of its barriers to effective communication within the www.miumiu.com Website which prevent individuals with disabilities who are visually impaired from the means to comprehend the information delineated therein.

---

[5] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

[6] Congress expressly stated when passing the ADA, "the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times" and technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required.

59.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

60.     Such barriers result in punishment and isolation of blind and low vision from the rest of society.

61.     According to Statistic Brain Research Institute[7], in 2014, online sales in the United States exceeded $304 Billion U.S. Dollars. On average, 87% of Americans that have browsed online stores which permit shopping/buying items online (such as www.miumiu.com) and  have made an internet purchase, while 57% of Americans that have browsed online stores have made a purchase multiple times.

62.     According to the National Federation for the Blind[8], there are over seven million Americans with visual disabilities, and there are over half a million people with visual disabilities living within the state of Florida.

63.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendants' unlawful and discriminatory practices.

64.     Notice to Defendants is not required as a result of Defendants' failure to cure the violations. Enforcement of Plaintiff's rights is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

---

[7] US Commerce Department, Forrester Research date: October 9, 2014, See
http://www.statisticbrain.com/total-online-sales/
[8] Statistics for 2012, see http://www.NFB.org/blindness-statistics

65.     Plaintiff has retained the civil right law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

**Trespass Violations**

66.     Plaintiff Andres Gomez utilizes his personal computer to access websites such as the www.miumiu.com website. Plaintiff Gomez uses his personal computer as a method of conveyance of his personal information. As such, Plaintiff Gomez stores his personal information and retains his browsing history on his personal computer.

67.     When navigating the Website, software analytics within the Website place forms of software to collect non-public information on the website's user's preferences and internet browsing habits.

68.     The Website informs the Website user that the user's personal information and browsing history is collected is used for targeted marketing and advertising, and ostensibly to improve the Website based on user's browsing and preferences which is conveyed to Defendant Prada S.p.A. based on the software analytics Defendant Prada S.p.A. installs on the user's computer when the user visits the Website.   Further, Defendant Prada S.p.A. discloses that any individual who accesses its website and commences to shop on that website is subject to having his/her personal information conveyed to third parties.

69.     The Plaintiff was unable to comprehend the Website; therefore, Plaintiff has/had no choice (and therefore no knowledge) of the Defendant Prada S.p.A.'s installation of software and collection of the website user's browsing history and analytics placed on the user's computer.

70.     Based upon the review of the Website, it is clear that, when a user accesses the Website, Defendant Prada S.p.A. installs software onto the user's computer. It is clear that the Defendant Prada S.p.A. has used browser cookies to identify websites that Plaintiff has previously visited by accessing Plaintiff's web browser history[9] for the benefit of Defendant Prada USA's Miu Miu stores and online sale of Miu Miu brand merchandise.

71.     As such, through its Website, Defendants have committed a trespass against the Plaintiff since the Website places software on the Plaintiff's personal computer without Plaintiff's consent.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

72.     Plaintiff Andres Gomez re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-65 above.

73.     The Department of Justice ("Department") has long taken the position that both State and local government websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities[10].

---

[9] As delineated in the "Cookies" section of the Defendant's Website
[10] See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

**The Website As A Place of Public Accommodation**

74.     Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the ADA to websites of public accommodations[11]. The Department is engaged in rulemaking to consider whether specific requirements or technical standards for website accessibility should be developed, but this does not undermine or change public accommodations' longstanding existing obligation to ensure equal access to their goods and services, including those offered via a website, for individuals with disabilities[12]; see Statement of Interest filed by the Department in *Andres Gomez v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

---

[11] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

[12] Pursuant to its statutory authority to promulgate regulations to implement Title III of the ADA, on July 26, 2010, the Department issued an Advanced Notice of Proposed Rulemaking ("ANPRM") on Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations, announcing the Department's interest in developing more specific requirements or technical standards for website accessibility. 75 Fed. Reg. 43,460 (July 26, 2010). In the ANPRM, the Department reaffirmed its longstanding position that the ADA applies to websites of public accommodations, and reiterated, consistent with the preamble to the 1991 regulations, that the ADA regulations should be interpreted to keep pace with developing technologies. *Id.* at 43,464 ("The Department has also repeatedly affirmed the application of Title III to Web sites of public accommodations."). The Department recognized, however, that in light of inconsistent court decisions on website-related obligations and differing technical standards for determining web accessibility, further guidance was warranted. *Id.* The development of the Department's web regulation is ongoing.

75.     Pursuant to 42 U.S.C. §12181(7)(E), Defendant Prada S.p.A. is a *Public Accommodation* under the ADA because it owns and/or operates the www.miumiu.com website, as defined within §12181(7)(E), and are subject to the ADA.

76.     Pursuant to 42 U.S.C. §12181(7)(E), www.miumiu.com is a *Place of Public Accommodation* under the ADA because it provides the general public with the ability to purchase Miu Miu brand merchandise online and have those purchased items delivered to one's home. Further, the Website also serves to augment Defendant Prada USA's Miu Miu stores by providing the public information on the various locations of Miu Miu stores and to educate the public as to the line of Miu Miu brand merchandise sold on the Website, and sold in Miu Miu stores, shop-in-shops, and in fine department stores.

77.     It is clear that the ADA applies to Defendant Prada S.p.A.'s Website, as the website **is** a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

78.     While the Eleventh Circuit has not yet ruled on whether a website is a place of public accommodation under the ADA, case law in other districts have provided favorable rulings. For example, in *Nat'l Ass'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d 196, 199 (D. Mass. 2012)[13].

---

[13] the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website itself was a place of public accommodation because the

79. In looking at the plain language of the statute, the district court noted the ADA covered the services **"of"** a public accommodation and not services **"in"** a public accommodation. *Id.* See citation of 42 U.S.C. § 12182(a): "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations **of** any place of public accommodation. . ."; *Nat'l Fed'n of the Blind v. Target Corp*., 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006). Further ruling: "The statute applies to the services **of** a place of public accommodation, not services **in** a place of public accommodation. To limit the ADA to discrimination in the provision of services occurring on a physical location, the premises of a public accommodation would contradict the plain language of the statute." *Id.* (emphasis added).

80. This linguistic distinction is crucial, because under Netflix's reading of the ADA[14], many businesses that provided services to a customer's home (such as plumbers, pizza delivery services, or moving companies) would be exempt from the ADA. *Id.* Due to this linguistic distinction, in *Netflix*, the court rationalized that while the home itself is not a place of public accommodation, entities that provided services in the home through the internet, such as Netflix, could qualify as places of public accommodation.

81. The court found similarly in *Nat'l Fedn. of the Blind v. Scribd Inc*., 97 F. Supp. 3d 565, 567 (D. Vt. 2015)[15] as the court rejected Scribd's arguments that Congress's use of the phrase "**place** of public accommodation" and the doctrine of

---

website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.

[14] In its Motion for Judgment on the Pleadings (which was denied)

[15] wherein the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), in that it provided a digital library operating reading subscription services on its websites and mobile app which were incompatible with reader software and denied blind persons' access to Scribd's services

*ejusdem generis* show that a public accommodation is defined exclusively as a physical space. *Id.* at 572. The court noted 42 U.S.C. § 12181(7) is entitled, "Public Accommodation" and not "Places of Public Accommodation," and refers to private entities as "public accommodations" and not "places of public accommodation." *Id.* (emphasis added).

82.     As such, the ADA's failure to refer to public accommodations as "places" of public accommodation in the above referenced instances suggested to the court that accommodations protected by the statute "must be available to the public, ***but not necessarily at a physical place open to the public***." *Id.*

83.     Web-based services did not exist when the ADA was passed in 1990 (therefore could not have been explicitly included in the Act). However, the ADA's legislative history makes clear Congress intended the ADA to adapt to changes in technology, such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of accommodation and services provided to individuals with disabilities . . . ***should keep pace with the rapidly changing technology of the times.***" *Netflix,* 869 F. Supp. 2d at 200 (citing H.R. Rep. 101-485(II), at 108 (1990)); *Scribd,* 97 F. Supp. 3d at 574 (same) (emphasis added). For example, Congress identified "information exchange" - the principal function of a website - as an important area of concern where expanding technology would be subject to the ADA. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)).

84.     The legislative history of the definition of "public accommodation" shows that Congress wanted the list of 12 exemplars enumerated in 42 U.S.C. § 12181(7) to be "construed liberally" in harmony with the ADA's broad purpose. *Netflix,* 869 F. Supp. 2d

at 200 (citing S. Rep. No. 116, at 59 (1990) (("[W]ithin each of these categories, the legislation only lists a few examples and then, in most cases, adds the phrase 'other similar' entities. ***The Committee intends that the 'other similar' terminology should be construed liberally*** consistent with the intent of the legislation that people with disabilities should have equal access to the array of establishments that are available to others who do not currently have disabilities."). *Scribd,* 97 F. Supp. 3d at 572-73 (same) (emphasis added).

85.     Congressional intent was that the defining characteristic of public accommodations be that **they offer goods or services to the public**, **not that they offer goods or services to the public at a physical location**. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(III), at 54 (1990)).

86.     The defining characteristic is that the entity provide a service or a good, which would then enable that entity to fall into one of the general ***categories*** of entities enumerated by 42 USC §12181(7). *Id.* (citing S. Rep. 101-116, at 54 (1990)).

87.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

88.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or

accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

89.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

90.     As such, the www.miumiu.com website must be in compliance with the ADA.  However, the Website is not in compliance with the ADA.  Plaintiff Andres Gomez has suffered an injury in fact because of the Website's (and Defendant's) non-compliance with the ADA.

**Barriers to Access**

91.     As a result of the inaccessibility of Defendant Prada S.p.A.'s Website individuals with disabilities who are visually impaired are denied full and equal enjoyment of the information and services that Defendant has made available to the public on the Website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.  Further Defendant Prada USA has denied individuals with disabilities who are visually impaired full and equal enjoyment of the information and services within the Website which are directly connected to Miu Miu stores.

92.     Types of website programming errors include (but are not limited to) *Programming Error Types* ("PETs"), which are easily identifiable and correctable, and *Programing Alert Error Types* ("PATs"), which are prone to making the website inaccessible.

93.     A sampling review of just part *of the* Website revealed that the website is not functional for users who are visually impaired.  The Website contains several types of PETs (easily identifiable and correctable), which occur throughout the Website such as:

1) The language of the document is not identified,
2) Image alternative text is not present, and
3) A form control does not have a corresponding label.

94.     Further, the Website contains various types of PATs (prone to making the website inaccessible), which occur throughout the Website, such as:

1) Alternative text is likely insufficient or contains extraneous information,
2) An event handler is present that may not be accessible,
3) A heading level is skipped,
4) Flash content is present,
5) Adjacent links go to the same URL,
6) A link contains no text, and
7) Alternative text is likely insufficient or contains extraneous information.

95.     More violations may be present on other pages of the Website, and they will be determined and proven through the discovery process.

96.     Further, the Website does not offer include the universal symbol for the disabled[16] which would permit disabled individuals to access the Website's accessibility information and accessibility facts.

---

[16]  , or HTML "Accessibility" link for those individuals who are visually impaired

97.     There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include (but not limited to) adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make the Website accessible would neither fundamentally alter the nature of Defendants' business nor would it result in an undue burden to the Defendants.

98.     The Defendants have violated the ADA (and continue to violate the ADA) by denying access to the Website to individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within the www.miumiu.com website are ongoing.

**<u>Requirement for Effective Communication</u>**

99.     It is irrefutable that the ADA and implementation of ADAAG requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective.

100.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems".  28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

101.     Section   28   C.F.R.   §36.303(c)   specifically   states   that   public accommodations must furnish appropriate auxiliary aids and services where necessary to

ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

102.    Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

103.    The Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

104.    The Department has consistently told courts, members of Congress, and businesses that Title III applies to websites and services provided over the Internet. Addressing the 106th Congress, the Department stated: "It is the opinion of the Department of Justice currently that the accessibility requirements of the Americans with Disabilities Act already apply to private Internet Web sites and services[17]." The Department believes that Title III reaches the Websites of entities that provide goods or services that fall within the 12 categories of 'public accommodations,' as defined by the statute and regulations; 75 Fed. Reg. 43460-01 (July 6, 2010).

105.    In rendering its opinion in *Scribd,* the court referenced the Department's opinion and stated: "Covered entities under the ADA are required to provide effective

---

[17] 106th Congress, 2d Sess. 65-010 (2000)

communication, regardless of whether they generally communicate through print media, audio media, or computerized media such as the Internet[18]" *Scribd,* 97 F. Supp. 3d at 574.

**Violations of the ADA**

106.    As a result of the inadequate development and administration of the www.miumiu.com website, Plaintiff Andres Gomez is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

107.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Andres Gomez injunctive relief; including an order to:

a)  Require Defendants to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of the www.miumiu.com website to a statement as to the Defendants' policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its Website.

b)  Require Defendants to take the necessary steps to make the Website readily accessible to and usable by visually impaired users, and during that time period prior to the www.miumiu.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the Website until such time that the requisite modifications are made, and

c)  Require Defendants to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of viewing and locating Miu Miu stores and becoming informed of

---

[18] citing Letter from Deval L. Patrick, Assistant Att'y Gen., to Senator Tom Harkin (Sept. 9, 1996)

and purchasing Miu Miu merchandise online, and during that time period prior to the Website's being designed to permit individuals with visual impairments to effectively communicate, to provide an alternative method for individuals with visual impairments to effectively communicate for such goods and services made available to the general public through the Website.

108.   Plaintiff Andres Gomez has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiff Andres Gomez is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Prada USA Corp.

## COUNT II – TRESPASS

109.   Plaintiff Andres Gomez re-alleges and incorporates by reference the allegations set forth in ¶¶s 1–71 above.

110.   Plaintiff Gomez's tangible personal property, being his computer and the personal information and browsing history stored therein, has suffered a trespass by Defendants on each and every date that the Plaintiff has accessed the www.miumiu.com website.  Plaintiff Gomez's personal information has suffered a trespass due to the employment of software analytics by Defendant which are present on the Website, which the Plaintiff has navigated.

111.   Plaintiff Gomez was unaware that the Website was placing software on his computer due to his inability to effectively communicate with of the Website.

112.   Plaintiff Gomez did not consent to the placement of software on his personal computer; therefore Defendants have committed a trespass against Plaintiff.

113.   By the hereinabove acts, Defendants have repeatedly and persistently engaged in trespass of the Plaintiff's personal property in violation of the common law.

114.   The installation, operation, and execution of software on Plaintiff's computer by the Website which benefits both Defendants has impaired the condition and value of the Plaintiff's computer.

115.   Within the Website (http://www.miumiu.com/en/company_info?cc=US), the Website states the following:

"4. Cookies - Cookies are used in the Website to ensure its efficient functioning and to improve our service. Cookies are small text files sent to the user's computer (usually to the user's browser) by visited websites; they are stored in the user's computer to be then re-transmitted to the websites on the user's subsequent visits to those websites. PRADA uses temporary session cookies that are automatically deleted after each visit and permanent cookies that are stored on the user's hard disk until their expiration or deletion by the user. Cookies are used to improve website navigation and collect information in an anonymous form about how users use the Website."

5. Privacy - In general, you can access and browse the Website without providing Personal Data. However, there may be times when you may be requested to knowingly and willingly provide some Personal Data, so that you may participate in the Website's services, activities or features.  For the purpose of using these Website sections, you undertake to read the relevant privacy policy expressing, when requested, your consent to your personal data processing and you agree to provide true, accurate, current and complete information.

Personal Data are processed by the Data Controller − mainly using electronic tools − as identified in the relevant privacy policy. Whenever necessary and/or instrumental to the purposes for which Personal Data have been collected, your personal data may be processed by other entities appointed by the Data Controller for this purpose and belonging to the following categories:
(a)   Other Prada Group companies;
(b)   Companies, consultants and professionals providing assistance and/or consulting, or performing related services that are instrumental to data processing (e.g. service providers, freight forwarders, IT maintenance technicians, etc...) "

116.   As a direct and proximate result of Defendants' trespass to chattels, nuisance, and interference and unauthorized access of and intermeddling with the Plaintiff's property, the Defendants have injured and impaired on the condition and value of the Plaintiff's computer as follows:

a)      By consuming the resources of an/or degrading the performance of Plaintiff's computer (including space, memory, processing cycles and internet connectivity);

b)      By infringing on Plaintiff's right to exclude others from his computer;

c)      By infringing on Plaintiffs right to determine (as owner of his computer) which programs should be installed and operated on his computer;

d)      By compromising the integrity, security, and ownership of Plaintiff's computer; and

e)      By forcing the Plaintiff to expend money time, and resources in order to remove the programs installed on his computer without notice or consent.

117.    For all of the foregoing, the Plaintiff has no adequate remedy at law.

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff Andres Gomez hereby demands judgment against Defendant Prada USA Corp. and Defendant Prada S.p.A. and request the following injunctive and declaratory relief:

a) The Court issue a declaratory judgment that Defendants have violated the Plaintiff's rights as guaranteed by the ADA;

b) The Court enter an Order requiring Defendants to update the www.miumiu.com website to remove barriers in order that individuals with visual disabilities can access the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

c) The Court enter an Order requiring Defendants to clearly display the universal disabled logo[19] within its Website, wherein the logo would lead to a page which would state Defendants' accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the www.miumiu.com website;

d) The Court enter an order requiring Defendants to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

e) The Court enter an Order directing Defendants to create policies, practices and procedures toward persons with visual disabilities, for such reasonable time so as to allow Defendants to undertake and complete corrective procedures to the Website;

f) The Court enter an Order directing Defendants to establish a policy of web accessibility and accessibility features for the Website to insure effective communication for individuals who are visually impaired;

g) The Court to declare that Defendants' actions, as set forth above, violate the Florida common law tort of trespass as alleged above in that the Website has placed unwarranted and unauthorized software on Plaintiff's computer without his consent;

---

[19] 

h) The Court to award injunctive and equitable relief as applicable, including:

    i.    prohibiting Defendants from engaging in the acts alleged above;

    ii.    requiring Defendants to provide effective communication to users of its Website such that individuals who are visually impaired have knowledge and notice of Defendants' placement of software on their computer(s); and

    iii.    requiring Defendants to provide Plaintiff reasonable means for visually impaired individuals to decline participation in the placement of software on his computer by the Website;

i) The Court award damages in an amount to be determined at trial;

j) The Court to award Plaintiff reasonable litigation expenses and attorneys' fees; pre- and post-judgment interest to the extent allowable; and other equitable relief as the Court deems proper; compensatory damages sustained by Plaintiff; and permanent injunctive relief prohibiting Defendants from engaging in the conduct and practices complained of herein; and

k) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 2nd day of February, 2017.

Respectfully submitted,

*s/Scott Dinin*
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*